ACCEPTED
15-24-00101-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/4/2025 10:42 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00101-CV

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

———

MIKE MORATH, IN HIS OFFICIAL CAPACITY AS THE
COMMISSIONER OF EDUCATION,

*Appellant,*

*v.*

PECOS-BARSTOW-TOYAH INDEPENDENT
SCHOOL DISTRICT, ET AL.,

*Appellees.*

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/4/2025 10:42:53 AM
CHRISTOPHER A. PRINE
Clerk

———

On Appeal from the
201st Judicial District Court, Travis County

———

**BRIEF FOR GOOD REASON HOUSTON, TEXAS 2036, THE COMMIT PARTNERSHIP, THE TEXAS BUSINESS LEADERSHIP COUNCIL, THE GREATER HOUSTON PARTNERSHIP, EDTRUST, THE NATIONAL PARENT UNION, PARENT SHIELD FORT WORTH, AND COLLABORATIVE FOR STUDENT SUCCESS AS *AMICI CURIAE***

———

ANNE MAIRE MACKIN
Texas State Bar No. 24078898
Lex Politica PLLC
P.O. Box 341016
Austin, TX 78734
Telephone: 512-354-1785
amackin@lexpolitica.com

**COUNSEL FOR *AMICI CURIAE***

# TABLE OF CONTENTS

Index of Authorities ............................................................................................. ii

Statement of Interest of Amici Curiae ...................................................................v

Introduction...........................................................................................................1

Summary of Argument ..........................................................................................3

Argument ...............................................................................................................5

I. Accountability Ratings Are Essential to Fulfilling the Texas Constitution's Requirement that the Legislature Ensure "A General Diffusion of Knowledge." ..................................................................................................5

    a. Background on Texas Public School Accountability ..............................5

    b. Accountability Ratings Ensure that the Legislature is Successfully Providing "A General Diffusion of Knowledge."...................................6

    c. Accountability Ratings Further the Legislature's Stated Goals and Mission for the Texas Public Education System. ...................................9

II. Students, Parents, Schools, Community Partners, Businesses, and Taxpayers Rely on and Benefit From Consistent and Transparent Accountability Ratings—as Does Every Other Texan. ...........................................................13

    a. Students .................................................................................................14

    b. Parents and Families.............................................................................17

    c. Schools and Community Partners .........................................................19

    d. Businesses .............................................................................................21

    e. Taxpayers and The Texan Public.........................................................24

III. The Appropriate Remedy for the Commissioner's Alleged Failure to Meet Process Requirements is Not Continued Withholding of the A-F Ratings. .....27

Prayer ..................................................................................................................29

Certificate of Compliance...................................................................................29

Certificate of Service ..........................................................................................30

# INDEX OF AUTHORITIES

## Cases

*Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717 (Tex. 1995) ........................8

*Matzen v. McLane*, 659 S.W.3d 381 (Tex. 2021) .....................................................27

*Morath v. Texas Taxpayer & Student Fairness Coal.*,
     490 S.W.3d 826 (Tex. 2016) ...........................................................................7, 8

Order Granting Plaintiffs' Application for Temporary Injunctive Relief, *Pecos-Barstow-Toyah Indep. Sch. Dist. v. Morath*, No. D-1-GN-24-005018 (201st Dist. Ct., Travis Cnty., Tex. Sept. 18, 2024) ........................................... 15, 16

Order, *Morath v. Kingsville ISD*,
     No. 03-23-007 29-CV (Tex. App.—Austin Nov. 3, 2023) ........................ 15, 16

*W. Orange-Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558 (Tex. 2003)..............7, 8

## Statutes

Tex. Const. art. VII, § 1 ............................................................................... passim

Tex. Educ. Code § 4.001(a) ......................................................................................11

Tex. Educ. Code § 4.002 ..........................................................................................10

Tex. Educ. Code § 26.001(a) ....................................................................................18

Tex. Educ. Code § 39.023(a) ....................................................................................10

Tex. Educ. Code § 39.053 .........................................................................................18

Tex. Educ. Code § 39.053(c) ................................................................................9, 10

Tex. Educ. Code § 39.053(c)(1)............................................................................9, 10

Tex. Educ. Code § 39.053(c)(2).................................................................................9

Tex. Educ. Code § 39.053(f)........................................................................ 11, 12, 14

Tex. Educ. Code § 39.054(a-1)(1) .............................................................................9

Tex. Educ. Code § 39.054(a-3) .................................................................................26

Tex. Educ. Code § 39.054(a-4)(4) ............................................................................13

Tex. Educ. Code § 39.0542(a)-(b) ............................................................................18

Tex. Educ. Code § 39.0544.......................................................................................13

Tex. Educ. Code § 39.0548.......................................................................................13

Tex. Educ. Code § 39.306(a)(2).................................................................................26

Tex. Educ. Code § 39.306(d) ...................................................................26

Tex. Educ. Code § 39.309(a) ..................................................................26

**Other Authorities**

Act of May 29, 2017, 85th Leg., R.S. ch. 807, 2017 Tex. Gen. Laws 3404 .............5

BUREAU OF LABOR STATISTICS, *Education Pays*, Unemployment rates and earnings by educational attainment, 2023, https://www.bls.gov/emp/tables/unemployment-earnings-education.htm .......23

Commit Partnership, *2024 Polling Results One Pager*, https://commitpartnership.org/uploads/images/2024-Polling-Results-One-Pager.pdf ...................................................................................................17

Dallas Indep. Sch. Dist., *Accelerating Campus Excellence (ACE)*, https://www.dallasisd.org/about/accelerating-campus-excellence-ace/accelerating-campus-excellence-ace .......................................................19

Debate on Tex. H.B. 22 on the Floor of the Senate, 85th Leg., R.S. (May 28, 2017) ........................................................................6

FEDERAL RESERVE BANK OF DALLAS, *Texas Business Outlook Surveys* (Jan. 27, 2025), https://www.dallasfed.org/research/surveys/tbos/2025/2501q .............24

Good Reason Houston, *Building the Future Workforce*, https://goodreasonhouston.org/wp-content/uploads/GRH-Phase-1-Findings-Report-Updates.pdf ............................................................................ 22, 23

Houston Indep. Sch. Dist., *HISD Announces 2023 School Ratings and New NES Schools* (Jan. 23, 2024), https://www.houstonisd.org/site/handlers/filedownload.ashx?moduleinstanceid=387469&dataid=418840&FileName=01-23-24-HISD_Press_Packet_HISD%20Announces%202023%20School%20Ratings%20and%20New%20NES%20Schools.pdf ....................................................20

Letter from Mike Morath, Commissioner of Education, TEA, to Millard House, III, Superintendent, Houston Indep. Sch. Dist. Re: Appointment of Board of Managers (Mar. 15, 2023), https://tea.texas.gov/texas-schools/school-boards/hisd-coe-correspondence.pdf ........................................................ 20, 21

TEA, 2017 ANNUAL REPORT, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/teaannualreport2017.pdf .....................................16

TEA, 2019 ACCOUNTABILITY MANUAL, https://tea.texas.gov/system/files/Adopted%202019%20Accountability%20Manual_final.pdf ...................................................................................5

TEA, 2019 ANNUAL REPORT, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/tea-annual-report-2019.pdf ...................................16

TEA, 2022 ANNUAL REPORT, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/tea-annual-report-2022.pdf ...................................16

TEA, 2024 ANNUAL REPORT, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/tea-annual-report-2024.pdf ...................................16

TEA, *2024 Houston ISD Grade 3-8 STAAR Results*, https://www.houstonisd.org/site/handlers/filedownload.ashx?moduleinstanceid=109240&dataid=428728&FileName=Special%20Meeting%20Presentation%20Materials%20for%206.27.24.pdf..................................................................20

TEA, *Completion, Graduation, and Dropout Data*, https://tea.texas.gov/reports-and-data/school-performance/accountability-research/completion-graduation-and-dropout/completion-graduation-and-dropout-data ....................................13

TEA, *Report on Public Education State Funding Transparency*, https://tea.texas.gov/about-tea/government-relations-and-legal/government-relations/public-education-state-funding-transparency-may-2024.pdf ............25

TEA, *Texas ACE: Highlights and key takeaways from the 2021-22 programming period*, https://tea.texas.gov/reports-and-data/program-evaluations/program-evaluations-out-of-school-learning-opportunities/tx-ace-outcomes-report-21-22.pdf ................................................................................................19

TEA, *Texas Assessment Research Portal*, https://txresearchportal.com/................12

Tex. Higher Educ. Coordinating Bd., *The Texas Talent Trajectory (T3)* (July 23, 2024) https://databridge.highered.texas.gov/the-texas-talent-trajectory/.........22

Texas 2036, *8th Texas Voter Poll* (Dec. 11, 2024), https://texas2036.org/wp-content/uploads/2024/12/8th-Voter-Poll-Brochure_121124_final.pdf ............22

U.S. CENSUS BUREAU, POVERTY IN THE UNITED STATES: 2021 (Sept. 2022), https://www.census.gov/content/dam/Census/library/publications/2022/demo/p60-277.pdf...........................................................................................23

iv

## STATEMENT OF INTEREST OF AMICI CURIAE

*Amici curiae* are advocacy organizations that support policies that align academic data with targeted resources and programming. Accordingly, *amici* support the issuance of the A-F accountability ratings that are at issue in this case. Some *amici* work directly with districts for intervention programs, strategic planning, and data analysis; while others represent stakeholders not before the Court —including students, families, critical education advocates and partners, and Texas's most influential business leaders.

**Good Reason Houston** is a nonpartisan education nonprofit that collaborates with public school systems across the Houston region, which is home to more than 1,000 public schools, to ensure every child in every neighborhood has access to a world-class public school that prepares them to thrive in the Texas of tomorrow. Alongside its public school district partners, Good Reason Houston leverages and relies upon school accountability and student outcome data to support the strategic improvement of the Houston region's public schools. Good Reason Houston relies on the A-F accountability ratings for three of its key programs. First, Good Reason Houston supports district partners with strategic planning, and leverages accountability ratings to develop high-quality seat analyses to help target support to campuses and identify turnaround models. Second, Good Reason Houston is conducting a long-term research project on postsecondary outcomes and regional

living wage attainment. As part of this project, Good Reason Houston plans to study the credential and living wage attainment of graduates based on accountability ratings to measure the impact of state-defined school quality on student outcomes. Third, Good Reason Houston regularly relies on accountability ratings to encourage targeted resource allocation, both locally and at the state level.

**Texas 2036** is a nonpartisan, nonprofit organization with a mission of empowering state policymakers and all Texans to make informed decisions using data and long-term strategic planning to sustain Texas as the best place to live and work. The delivery of high-quality public education is key to this vision of Texas. To achieve its mission, Texas 2036 believes that one of the best ways to ensure continued improvement of student outcomes is through a robust system of strong academic standards, statewide assessments, and school accountability. Specifically, the A-F system is key to maintaining valid, reliable, and transparent assessment and accountability system to inform state policymakers and Texas families alike.

**The Commit Partnership** helps unite and align school systems, higher education institutions, policymakers, businesses, nonprofits, community members and foundations in the Dallas area and across the state to create systemic change in our education system and improve economic opportunity. As the largest collective impact organization in the nation, the Commit Partnership joins this brief to highlight the significant importance of a transparent, reliable and consistent state

academic accountability system for PK-12 public and charter schools. Without objective, comparable data that the A-F system provides, parents, policymakers and community members are often left in the dark about relative improvements or needed opportunities for Texas's 5.5 million public school children. Given that Texas educates 10% of the country's students, it's vital that Texas have an accountability system that the public and community organizations like the Commit Partnership can rely upon to inform resourcing efforts and close achievement gaps.

**The Texas Business Leadership Council** is a statewide network of 100 CEOs and senior business executives who advance a long-term vision of a prosperous Texas in a globally competitive business environment. Membership is comprised of leaders of small, medium, and large businesses. The Council supports government transparency and accountability in key taxpayer-funded systems including education, and its members rely on A-F ratings to inform their business decisions. For example, A-F ratings help businesses decide where to operate and expand, because current employees value good public schools. Businesses also want to ensure that local schools will provide a pipeline of qualified future employees. Particularly for businesses in high-demand fields that require many workers—such as healthcare and applied manufacturing—high-quality local high schools from which to recruit are attractive to businesses and drive success for both the business and the community. Even before high-school graduation, businesses consider A-F

ratings to determine where they can tap into a qualified pool of students to participate in work-based learning opportunities like internships and apprenticeships, particularly for middle-skills roles that require less than a bachelor's degree. A-F ratings also impact economic development efforts, as out-of-state businesses consider all of the factors above when considering whether to locate in Texas.

**The Greater Houston Partnership** is the Houston region's premier business and community organization focused on ensuring Houston remains one of the most dynamic and opportunity-rich places to live, work, and do business. Representing 12 counties and nearly 1000 businesses and other organizations, we unite leaders to create opportunity and build a more prosperous region. Houston's business community relies on TEA accountability ratings to inform them of the state of the workforce pipeline and to ensure that students are graduating with the necessary knowledge and skills to succeed in their careers. Businesses also rely on these ratings for site selection decisions and factor them into employee recruitment and retention considerations. By setting standards, measuring schools against those standards, and establishing consequences, schools are held accountable, and businesses are more able to operate successfully. Without this transparency and accountability, the Houston region's workforce and local economy—and by extension its local communities—will suffer.

**EdTrust** advocates for students, especially those whose potential is often overlooked – students of color, students from low-income backgrounds, students with disabilities, and multilingual learners. Since 1996, EdTrust has championed transparency and accountability in education funding and delivery—with and for students, parents, and local communities. Since the passage of No Child Left Behind in 2001 and the Every Student Succeeds Act in 2015, EdTrust has unwaveringly maintained that state accountability systems should be designed and implemented to ensure all students have access to high-quality learning experiences by identifying schools producing the lowest outcomes for students and providing these schools with the resources and supports needed to improve, while providing all schools with data to inform resource allocation and continuous improvement efforts.

**The National Parent Union** represents 1.8 million parents and families across the United States, including in Texas, who are committed to ensuring that every child has access to a high-quality education. Our organization amplifies the voices of parents—particularly those from historically underserved communities—who demand transparency, accountability, and excellence in our nation's schools. Parents across the country deserve clear, accurate, and accessible information about how their children are performing academically and how their schools are serving students. Without reliable data, families are left in the dark, unable to advocate for the resources, interventions, and opportunities their children need to succeed. A

strong system of educational accountability is essential to ensuring that every child—regardless of zip code—receives the education they deserve. As an organization that works daily with parents who are fighting for better outcomes for their children, the National Parents Union has a direct and substantial interest in this case. We urge the Court to consider the importance of maintaining and strengthening transparency and accountability in education, ensuring that all parents—especially those in Texas and beyond—have the tools they need to make informed decisions for their children's future.

**Parent Shield Fort Worth** was established with the goal of shifting the balance of power in education to serve parents and children. The organization works to educate and unite parents, advocating for the inclusion of all students in an education system that develops their potential and prepares them to be successful adults. Parent Shield Fort Worth firmly believes that parents must play a central role in decisions regarding their children's education, with access to clear and actionable information that enables them to support their children and advocate for others. The A-F accountability system is a critical tool, providing parents with accessible, easy-to-understand data on school performance. This transparency not only allows parents to make informed decisions but also drives continuous improvement to ensure all children receive the quality education they deserve.

**The Collaborative for Student Success** is dedicated to lifting up and defending strong policies and practices driving improved outcomes for all students. From transparent, actionable data to high-quality classroom instruction to innovative and bold uses of federal and state dollars, we hold up what's working and encourage others to adopt the efforts making a difference for students, teachers, and families. The Collaborative for Student Success believes that it is critical for parents to be well-informed and engaged, and for educators and policymakers to be intentional and clear-eyed about the actions needed to ensure success for all students.

The fee for the preparation and filing of this brief is being paid in full by *amici curiae*.

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

The district court's order below prevented the Appellant, Mike Morath in his official capacity as Texas Commissioner of Education, from releasing A-F accountability ratings for the 2023-2024 school year. This marks the second consecutive year that A-F accountability ratings have been blocked by litigation and the fifth consecutive year that students, families, community partners, businesses, and other stakeholders across Texas started the school year without a clear understanding of how well schools are meeting students' academic needs. In fact, since the 85th Texas Legislature established the current A-F rating system in 2017, there has been just *one year*—2019—when full accountability ratings were issued for all Texas public school districts and campuses. As a result, Texans continue to be deprived of the sole "apples-to-apples" comparison tool available for assessing public school performance, holding schools accountable, targeting advocacy and efforts for improvement, and making crucial family and business decisions.

Appellees are 33 school districts that successfully enjoined the Commissioner from releasing 2024 A-F accountability ratings for all 1200-plus school districts in the State. The parties have briefed the merits of Appellees' legal theories. *Amici* generally take no position on whether Appellees' theories have merit, but they strongly disagree with the remedy that the district court imposed, on both legal and

1

practical grounds. Accordingly, *amici* respectfully submit this filing to highlight the consequences of the district court's order, which impacts not just students, parents, schools and community partners, businesses, and taxpayers—but each and every Texan. *Amici* respectfully urge the Court that—even if Appellees were right on the merits—the proper remedy is not to deprive the people of Texas of their sole accountability yardstick for one of the State's largest and most important enterprises: its public schools.

**SUMMARY OF ARGUMENT**

Because "[a] general diffusion of knowledge" is "essential to the preservation of the liberties and rights of the people," the Texas Constitution requires the Legislature to provide and maintain an "efficient system" of "free public schools." Tex. Const. art. VII, § 1. The Texas Supreme Court has repeatedly held that accountability ratings are an indispensable element of the Legislature's chosen system for meeting this constitutional obligation. The A-F accountability system that exists in current law is also targeted to the Legislature's stated mission and goals for the Texas public school system.

As importantly, in the current system, A-F ratings are the *only* meaningful tool that most Texans and stakeholders have for assessing school progress and performance. These ratings are a crucial accountability and transparency tool that students, parents, schools and their community partners, and businesses rely on to foster a robust and successful Texas. Even apart from these obvious stakeholders, every Texan has an interest in how the Texas public education system is performing—this is, after all, why the Legislature has elected to require the Commissioner to publish A-F accountability ratings *to the public* each year.

The district court's order below frustrates this objective. It also exceeds the scope of relief available in a case like this one, where jurisdiction is predicated on an alleged ultra vires action by a state official. *Amici* respectfully urge the Court to

3

vacate the injunction below, thereby allowing the Commissioner to issue the statutorily mandated A-F accountability ratings.

I.  **Accountability Ratings Are Essential to Fulfilling the Texas Constitution's Requirement that the Legislature Ensure "A General Diffusion of Knowledge."**

a.  **Background on Texas Public School Accountability**

For over 30 years, the Texas Legislature has imposed a public-school accountability system to rate school districts and evaluate campus performance based on student achievement. The Texas Supreme Court has repeatedly found that this accountability system is a crucial component of the Texas public school system because it allows for evaluation of how well the State is meeting its constitutional duty to educate Texas children.

The Legislature established the current A-F accountability framework in 2017. Act of May 29, 2017, 85th Leg., R.S. ch. 807, 2017 Tex. Gen. Laws 3404. Through this legislation, an improved system of A-F letter grade ratings replaced the more ambiguous (and less practically useful) rating categories "met standard," "met alternative standard," "improvement required," and "not rated." *See id.*[1] Based on recommendations from the Texas Commission on Next Generation Assessments & Accountability—and as discussed in more detail below—the Legislature adopted A-F ratings to require a clear, transparent evaluation of school and district performance.

---

[1] *See also, e.g.,* TEA, 2019 ACCOUNTABILITY MANUAL at 91, https://tea.texas.gov/system/files/Adopted%202019%20Accountability%20Manual_final.pdf.

The goal was laudable (and simple): to offer students, parents, educators, policymakers, and communities an accessible way to understand how well Texas public schools are supporting student achievement,[2] as is essential under the Texas Constitution.

**b.    Accountability Ratings Ensure that the Legislature is Successfully Providing "A General Diffusion of Knowledge."**

The Texas Constitution requires the Legislature to provide for "a general diffusion of knowledge" via the public school system as follows:

> A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

Tex. Const. art. VII, § 1. This "general diffusion of knowledge" is—by its express terms— "essential" to supporting the rights of Texans, and the Legislature is constitutionally obligated to provide for a public school system that achieves this result. *Id.*

For decades, the Texas Legislature has discharged its mandate under article VII, section 1 by, among other things, demanding accountability of schools. As the Texas Supreme Court has explained, this has been the case ever since "the Legislature in

---

[2] *See, e.g.*, Debate on Tex. H.B. 22 on the Floor of the Senate, 85th Leg., R.S. (May 28, 2017), https://senate.texas.gov/videoplayer.php?vid=17928&lang=en at 2:23:39 (SEN. TAYLOR: "The goal is, by very clearly defining these domains, every campus can know, and every district can know, what they need to work on to move to the next grade up.").

1993 equated an accredited education with a general diffusion of knowledge and discharged its duty to provide for the latter by demanding accountability of school districts." *W. Orange-Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558, 581 (Tex. 2003) ("*WOC I*"). Accountability ratings are part of a larger, four-component system through which, in short,

> the State Board of Education first establishes by rule the essential knowledge and skills that all students should learn[]. The STAAR test then measures how well that knowledge and those skills are being taught. The Commissioner assigns accountability ratings each year to hold campuses and districts accountable, and remedial measures are taken when campuses and districts fall short.

App. Br. at 2-3 (citations omitted). Thus, "the Legislature achieves a general diffusion of knowledge by devising a curriculum *and an accountability regime* to meet legislatively designed accreditation standards for schools and districts." *Morath v. Texas Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 849 (Tex. 2016) (citations omitted) (emphasis added). Accountability is, in other words, essential to this constitutional framework.

When deciding legal challenges to the public school system, the Texas Supreme Court has repeatedly found an accountability framework essential to ensuring the system's constitutional adequacy. As the Court summarized in a recent school-finance case:

> At the outset, we must consider whether the system, as the Legislature has designed it, is adequate to meet the constitutional requirement to provide a general diffusion of knowledge. …

7

> [T]he system the Legislature has chosen . . . does not represent an arbitrary and unreasonable effort to provide a general diffusion of knowledge. *District and campus performance is reviewed based on student achievement measures including test scores, dropout rates, and graduation rates.* Continued accreditation of districts and charter schools also depends on these measures of outputs.
>
> In *Edgewood* [*Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 790 (Tex. 1995)], we held that *this accountability regime, by itself, satisfied the Legislature's constitutional obligation to provide for a general diffusion of knowledge*. In *WOC I*, we again accepted that, under the Legislature's chosen system, the provision of an accredited education satisfies the Legislature's obligation to provide a general diffusion of knowledge.

*Morath v. Texas Taxpayer & Student Fairness Coal.*, 490 S.W.3d at 863–64 (additional citations omitted) (emphases added) (cleaned up). Thus, over time, the Texas Supreme Court has continued to recognize the accountability system as a critical tool for ensuring the constitutional adequacy of Texas's public education system.

This is not to say that simply *having* accountability ratings is enough to satisfy article VII, section 1. Rather, the Texas Supreme Court has also consistently recognized that "the Legislature's accountability regime, as designed, may not always be sufficient to meet the constitutional requirement of providing a general diffusion of knowledge." *Id.* at 864 (citing *Edgewood*, 917 S.W.2d at 730 n. 8 ("This is not to say that the Legislature may define what constitutes a general diffusion of knowledge so low as to avoid its obligation to make suitable provision imposed by article VII, section 1."); *WOC I*, 107 S.W.3d at 581 ("An accredited education may

8

provide more than a general diffusion of knowledge, or vice versa.") (cleaned up)).

Thus, accountability ratings are an essential component of assessing whether Texans are receiving a constitutionally adequate public school system that meets the "general diffusion of knowledge" standard. One cannot, of course, make such an assessment where—as here—the Commissioner is prohibited from releasing those accountability ratings in the first place.

c.  **Accountability Ratings Further the Legislature's Stated Goals and Mission for the Texas Public Education System.**

The current A-F accountability ratings are rooted in measurable outcomes across three domains: (1) student achievement; (2) school progress; and (3) closing the gaps. Tex. Educ. Code § 39.053(c). All ratings incorporate the closing the gaps domain, which considers performance differentials among students from different racial, ethnic, and socioeconomic groups. *Id.* All ratings also account for *either* the student achievement domain *or* the school progress domain, whichever score is higher. *Id.* § 39.054(a-1)(1). The school progress and student achievement domains are each based on the same information. *See generally* 1.RR.185:17-187:12. For elementary and middle schools, these domains are based on STAAR results. Tex. Educ. Code § 39.053(c)(1), (c)(2). For high schools, these domains are based on STAAR results; College, Career, and Military Readiness (CCMR) indicators; and graduation rate. *Id.* The difference between these two domains is that the bulk of the student achievement domain is based on academic performance, whereas the school

9

progress domain is based on whether there was an improvement in performance (both relative to the campus or district itself, and relative to other similar campuses or districts). *Id*.

These inputs track not only the Texas Constitution's mandate to the Legislature but also the Legislature's stated mission and goals in carrying out that mandate.

"To serve as a foundation for a well-balanced and appropriate education," the Legislature has stated four "Public Education Academic Goals." Tex. Educ. Code § 4.002. Specifically, "[t]he students in the public education system will demonstrate exemplary performance in" (1) "the reading and writing of the English language;" (2) "the understanding of mathematics;" (3) "the understanding of science;" and (4) "the understanding of social studies." *Id.* The STAAR test examines these four areas, in addition to any federally required subjects, and nothing more. Tex. Educ. Code § 39.023(a). The STAAR test also determines a large share of accountability ratings. Tex. Educ. Code § 39.053(c). By basing a large part of accountability ratings on STAAR results (whether in performance or improvement in performance), A-F ratings directly track the Legislature's stated public education academic goals.

The other key inputs into these domains—CCMR indicators and graduation rates—also align with the Legislature's stated mission.

> The mission of the public education system of this state is to ensure that all Texas children have access to a quality education that enables them to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation.

10

> That mission is grounded on the conviction that a general diffusion of knowledge is essential for the welfare of this state and for the preservation of the liberties and rights of citizens.

Tex. Educ. Code § 4.001(a).

As discussed above, CCMR indicators factor heavily into A-F accountability ratings. And these indicators include approximately a dozen items assessing preparedness for college (*i.e.*, SAT/ACT scores, Advanced Placement class scores, and International Baccalaureate scores), preparedness for a career (*i.e.*, industry certifications), and military enlistment. 1.RR.194:13-195:15. Thus, the current framework implements the stated mission to graduate students prepared to "fully participate" in "social, economic, and educational opportunities" after high school, thereby further tracking the Legislature's stated mission. Tex. Educ. Code § 4.001(a).

Finally, the accountability system—and A-F ratings in particular—are consistent with the statutory requirement that

> Annually, the commissioner shall define the state standard for the current school year for each achievement indicator adopted under this section. In consultation with educators, parents, and business and industry representatives, as necessary, the commissioner shall establish and modify standards to continuously improve student performance to achieve the goals of eliminating achievement gaps based on race, ethnicity, and socioeconomic status and to ensure this state is a national leader in preparing students for postsecondary success.

Tex. Educ. Code § 39.053(f). An approachable, easy-to-understand A-F rating system fosters meaningful consultation with groups as varied as "educators, parents,

and business and industry representatives" about "continually improv[ing] student performance," "eliminating achievement gaps," and "ensur[ing] this state is a national leader in preparing students for postsecondary success." *Id*. When compared to the old model—which assigned the opaque designations "met standard," "met alternative standard," and "improvement required"—the A-F system gives all of these stakeholders a significant (and crucial) new tool for fostering the continuous improvement that the Legislature has called for.

The general diffusion of knowledge requirement and the further parameters the Legislature has established regarding the mission and goals of public education align with the current A-F accountability system. Schools are held specifically accountable for their ability to graduate students ready for life after high school, and the assessment results that the accountability system reflects are based wholly upon the State's articulated public education goals.

**Crucially, A-F accountability ratings are the *only meaningful tool* that ordinary Texans have for assessing public school performance.** To be sure, much of the large-scale, raw data that goes into A-F accountability ratings is publicly available. For example, TEA publishes aggregated STAAR results[3] and graduation

---

[3] TEA, *Texas Assessment Research Portal*, https://txresearchportal.com/.

rates.[4] But these publications contain copious data, are shorn of context, and are more voluminous and complex than most Texans (and even many stakeholders) have the resources to evaluate. These data are also not presented in a manner that accounts for the nuances that Chapter 39 of the Texas Education Code goes to great lengths to capture.[5] This emphasizes why releasing the A-F ratings is essential: there is simply no substitute for them.

## II. Students, Parents, Schools, Community Partners, Businesses, and Taxpayers Rely on and Benefit From Consistent and Transparent Accountability Ratings—as Does Every Other Texan.

Numerous, diverse stakeholders rely on accountability ratings to ensure that Texas students are receiving the education they need and deserve. These stakeholders include students, parents, schools and their community partners, businesses (which rely on public schools to educate the incoming workforce and to help attract families to the communities where they operate), and taxpayers (many of whom pay a great deal of tax toward public education). In addition to these obvious stakeholders, the quality of our public schools impacts every Texan in some

---

[4] TEA, *Completion, Graduation, and Dropout Data*, https://tea.texas.gov/reports-and-data/school-performance/accountability-research/completion-graduation-and-dropout/completion-graduation-and-dropout-data.

[5] *See, e.g.*, Tex. Educ. Code §§ 39.0544 (providing for local accountability systems under certain circumstances), 39.0548 (providing an alternative method for calculating graduation rates for dropout recovery schools), 39.054(a-4)(4) (permitting the Commissioner to designate a school "Not Rated" under circumstances including where, "for [] reasons outside the control of the district or campus, the performance indicators would not accurately reflect quality of learning and achievement for the district or campus.").

measure. That's why the Legislature established a *public* accountability system, and that's why withholding accountability ratings impacts each and every Texan.

### a. Students

By law, the purpose of the accountability system is "eliminating achievement gaps based on race, ethnicity, and socioeconomic status and to ensure this state is a national leader in preparing students for postsecondary success." Tex. Educ. Code § 39.053(f). At its core, the system is designed to set standards for student performance to guide school systems, monitor progress toward those standards, and spur continuous improvement to better meet the needs of Texas children. Withholding accountability ratings denies Texas students an educational system that is dedicated to continually improving to better prepare them for the future.

To illustrate: Texas's education system ranks below the national average relative to other states for most tested subjects and grade levels based on National Assessment of Educational Progress ("NAEP") data from the U.S. Department of Education, which tests student achievement in reading and math at fourth- and eighth-grade levels. This underscores the need for clear information on public school performance to propel academic progress. For example, as the table on the next page shows, Texas currently ranks in the bottom quarter of states in fourth-grade reading. By eighth grade, the reading scores of Texas students drop to the bottom 12% nationally. In math, Texas fourth graders have performed better than the national

14

average in recent years, but the trend reverses by eighth grade, with Texas students ranking at or below average nationally.

Texas kids deserve better, and there is no reason why they can't *do better* relative to their peers across the nation. After all, Texas is a national leader in business, industry, innovation, and culture. It should be a national leader in K-12 education, too. A-F accountability ratings are a crucial tool to drive progress toward that goal. Unfortunately—since the A-F accountability system became law in 2017—only *one* complete set of A-F accountability ratings for all districts and campuses has been released. The table below illustrates this, and one can understand that changes were needed to accommodate the COVID-19 pandemic. But for 2023 and 2024, litigation has blocked the release of ratings, injecting uncertainty into the system and raising doubt about whether the A-F accountability ratings will continue to be withheld in future years.[6] For Texas to become nationally competitive in K-12 education—which is, after all, designed to serve *students* first and foremost—the regular and predictable release of accountability ratings is crucial.

---

[6] Order Granting Plaintiffs' Application for Temporary Injunctive Relief, *Pecos-Barstow-Toyah Indep. Sch. Dist. v. Morath*, No. D-1-GN-24-005018 (201st Dist. Ct, Travis Cnty., Tex. Sept. 18, 2024); *see* Order, *Morath v. Kingsville ISD*, No. 03-23-007 29-CV (Tex. App.—Austin Nov. 3, 2023).

| Texas National NAEP Rankings: 2017-2024[7] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **2017**[8] | **2018** | **2019**[9] | **2020** | **2021** | **2022**[10] | **2023** | **2024**[11] |
| Student Group | All | | All | | | All | | All |
| **4th Grade Reading** | 46 | - | 42 | - | - | 33 | - | 37 |
| **4th Grade Math** | 19 | - | 12 | - | - | 14 | - | 8 |
| **8th Grade Reading** | 42 | - | 46 | - | - | 41 | - | 44 |
| **8th Grade Math** | 25 | - | 32 | - | - | 25 | - | 34 |
| **A-F Ratings Released?** | None (New Law) | No Campus Ratings (New Law Transition) | Yes (Only full ratings for all districts & campuses) | None (COVID Pause) | None (COVID Pause) | No D or F Ratings (Pandemic Transition) | None (Court Order)[12] | None (Court Order)[13] |

[7] This brief cites the TEA reports on NAEP data because NAEP does not officially publish numerical "rankings" for states. The years, subjects, and grade levels in this table are those for which NAEP reported data from Texas public schools between 2017 and 2024.

[8] TEA, 2017 ANNUAL REPORT at 20-21, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/teaannualreport2017.pdf.

[9] TEA, 2019 ANNUAL REPORT at 18, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/tea-annual-report-2019.pdf.

[10] TEA, 2022 ANNUAL REPORT at 14, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/tea-annual-report-2022.pdf.

[11] TEA, 2024 ANNUAL REPORT at 14, https://tea.texas.gov/about-tea/news-and-multimedia/annual-reports/tea-annual-report-2024.pdf.

[12] Order, *Morath v. Kingsville ISD*, No. 03-23-007 29-CV (Tex. App.—Austin Nov. 3, 2023).

[13] Order Granting Plaintiff's Application for Temporary Injunctive Relief, *Pecos-Barstow-Toyah Indep. Sch. Dist. v. Morath*, No. D-1-GN-24-005018 (201st Dist. Ct., Travis Cnty., Tex.) (Sept. 18, 2024).

### b. Parents and Families

A-F accountability ratings provide parents and others in a child's support structure with clear, digestible information about the quality of learning provided by the public schools their children attend, including relative to other area schools. This allows parents and families to make informed decisions about a child's education, and to advocate for the educational resources and opportunities a child might need.

Texans recognize this. For example, a November 2024 Commit Partnership poll found that eighty-two percent of Texas voters support ensuring that schools receive an A-F letter grade to provide parents and policymakers with information on school performance.[14] This makes sense. Without A-F accountability ratings being assigned to all districts and campuses, parents and families cannot gauge their school's performance through an "apples-to-apples" comparison with other campuses and districts. After all, as noted above, accountability assessments for Texas public schools are complex and multi-factored; the raw data that goes into these assessments can be difficult to digest and contextualize without special training (or significant research and access to complex data analysis software). *See supra*, nn.3-5 and accompanying text. Without A-F ratings, there is also no way for parents to know if their children are being educated in a school whose performance is

---

[14] Commit Partnership, *2024 Polling Results One Pager* at 2, https://commitpartnership.org/uploads/images/2024-Polling-Results-One-Pager.pdf.

declining, improving, or holding steady year-over-year. Parents are also denied the primary tool for assessing the other public education options that may be available to them.

The Legislature has made explicit that "Parents are partners with educators, administrators, and school district boards of trustees in their children's education." Tex. Educ. Code § 26.001(a). When it comes to accountability in particular, informing parents about school performance is among the key goals of the system. *E.g.*, Tex. Educ. Code § 39.053 (school performance indicators "must measure and evaluate school districts and campuses with respect to," among other things, "informing parents and the community regarding campus and district performance."); 39.0542(a)-(b) (each school year, "the commissioner shall provide each school district a document in a simple, accessible format that explains the accountability performance measures, methods, and procedures that will be applied for that school year in assigning each school district and campus a performance rating," which "must be provided in a format that a school district is able to easily distribute to parents of students enrolled in the district and other interested members of the public").

Preventing the Commissioner from releasing accountability ratings frustrates these objectives and the Legislature's intent in requiring them in the first place,

depriving parents of the critical information they need to make the best educational choices they can for their children.

## c. Schools and Community Partners

Texas public education is supported by a network of communities, individuals, and philanthropic organizations that all contribute to help the overall system thrive. These community partners—along with the schools they support—rely on accountability ratings to help determine how to allocate resources to drive better academic outcomes.

For example, school districts and their community partners use accountability ratings to identify and support underperforming campuses. In 2015, Dallas Independent School District implemented the Accelerating Campus Excellence (ACE) turnaround strategy on seven persistently struggling campuses, based on accountability ratings.[15] ACE successfully worked to redistribute talent and resources to promote academic acceleration on those campuses. ACE has since been implemented in other districts, and across all state-tested subjects, ACE participants are more likely to meet state academic standards than their peers.[16]

---

[15] *See generally* Dallas Indep. Sch. Dist., *Accelerating Campus Excellence (ACE)*, https://www.dallasisd.org/about/accelerating-campus-excellence-ace/accelerating-campus-excellence-ace.

[16] TEA, *Texas ACE: Highlights and key takeaways from the 2021-22 programming period*, https://tea.texas.gov/reports-and-data/program-evaluations/program-evaluations-out-of-school-learning-opportunities/tx-ace-outcomes-report-21-22.pdf.

A-F accountability ratings also help identify districts and campuses that require state academic intervention. Houston Independent School District ("HISD") is currently undergoing a district-wide intervention, in part targeted to ensure underperforming campuses receive necessary academic support.[17] District leadership utilized accountability ratings (some of which were self-calculated and self-reported due to court orders preventing the release of ratings in 2023 and 2024) to target high-need campuses for additional centralized support through the New Education System ("NES").[18] After the intervention's first year, HISD saw record progress across grade levels and subjects, *outpacing the State in academic growth*.[19] Encouragingly, the most substantial change was concentrated in the campuses identified by HISD for participation in the NES based on their performance ratings.[20]

While HISD has seen progress in student academic performance during the intervention, without official accountability ratings, the district's pathway to

---

[17] Letter from Mike Morath, Commissioner of Education, TEA, to Millard House, III, Superintendent, Houston Indep. Sch. Dist. Re: Appointment of Board of Managers (Mar. 15, 2023), https://tea.texas.gov/texas-schools/school-boards/hisd-coe-correspondence.pdf.

[18] Houston Indep. Sch. Dist., *HISD Announces 2023 School Ratings and New NES Schools* (Jan. 23, 2024), https://www.houstonisd.org/site/handlers/filedownload.ashx?moduleinstanceid=387469&dataid=418840&FileName=01-23-24-HISD_Press_Packet_HISD%20Announces%202023%20School%20Ratings%20and%20New%20NES%20Schools.pdf.

[19] TEA, *2024 Houston ISD Grade 3-8 STAAR Results* at 3, 10, https://www.houstonisd.org/site/handlers/filedownload.ashx?moduleinstanceid=109240&dataid=428728&FileName=Special%20Meeting%20Presentation%20Materials%20for%206.27.24.pdf.

[20] *See, e.g., id.* at 133-135 (comparing growth in Math, Science, and Reading performance for NES schools and non-NES Schools. The presentation's references to "NES-A" schools refer to NES-aligned schools (*i.e.*, schools that adopted some portions of the NES intervention)).

transition back to local elected control is unclear. That is because one of the required "exit criteria" to end the ongoing intervention is ensuring that there are no multi-year D- or F- rated campuses within the district.[21] Absent the Commissioner's issuance of accountability ratings, it is unclear how this "exit criteria" could ever be satisfied. This could result in HISD's continued governance by a board of managers, thereby undermining the goal of having well-functioning school systems governed by the communities whose children they educate.

In short, academic accountability ratings are a vital tool to help schools and their community partners assess teacher and curriculum quality, identify appropriate turnaround and improvement strategies (where necessary), and evaluate how well those improvement and turnaround strategies are working (where applicable). Without A-F accountability ratings, there are few if any practical ways to accomplish these crucial objectives.

### d. Businesses

Texas businesses are key stakeholders in the state's public education system, and they rely on A-F accountability ratings to attract and retain qualified workers in the communities where they operate and ensure a pipeline of qualified employees. Businesses are also vital to a thriving public education system, because they hire workers both pre- and post- high school graduation, and provide learning

---

[21] Letter from Mike Morath at 5.

opportunities through internships and apprenticeships. Businesses therefore rely on A-F ratings to ensure that local schools are training qualified applicants for these opportunities. As discussed above, the A-F system heavily incorporates CCMR to hold schools accountable for graduating students prepared to fully participate in the future workforce and earn a sustainable wage.

Unfortunately, polling research conducted by Texas 2036 found that sixty-one percent of Texas voters believe high-school students are graduating unprepared for the workforce and the future economy.[22] These concerns are well-founded. According to data from the Texas Higher Education Coordinating Board, only about half of the Texas children enrolled in eighth grade in 2013 went on to enroll in Texas higher education, and only 1 in 4 went on to complete a postsecondary credential in the state.[23]

Lower postsecondary education rates set Texans up for lower earnings, as postsecondary credentials are tied to living wage attainment. This also impacts businesses and the Texas economy. Recent research by Good Reason Houston found that Houston-area high-school graduates who earn a bachelor's degree are 3.8 times more likely to earn a living wage.[24] A degree from a four-year college isn't necessary

---

[22] Texas 2036, *8th Texas Voter Poll* (Dec. 11, 2024), https://texas2036.org/wp-content/uploads/2024/12/8th-Voter-Poll-Brochure_121124_final.pdf.

[23] Tex. Higher Educ. Coordinating Bd., *The Texas Talent Trajectory (T3)* (July 23, 2024) https://databridge.highered.texas.gov/the-texas-talent-trajectory/.

[24] Good Reason Houston, *Building the Future Workforce* at 9, https://goodreasonhouston.org/wp-content/uploads/GRH-Phase-1-Findings-Report-Updates.pdf.

for improved outcomes: high-school graduates who earn a professional certification also increase their likelihood of earning a living wage threefold.[25] In this vein, according to the U.S. Census Bureau, earning a bachelor's degree reduces poverty rates from about 25-30% (for people with no high-school diploma) to about 4% (for people with a bachelor's degree).[26] Earning a bachelor's degree also reduces a person's likelihood of unemployment by half compared to high-school graduates, according to the Bureau of Labor Statistics.[27]

Businesses also utilize A-F ratings to make strategic decisions. For instance, businesses look to public school ratings to determine where to locate to ensure that the skilled workforce they need to succeed in a competitive market will exist in the local community. Businesses also know that quality public schools attract competitive candidates to a community. In addition to the impact on economic development, businesses consider school ratings in their efforts to develop talent pipelines by partnering with school districts on work-based learning and career exploration initiatives. Information from the Dallas Federal Reserve shows that, as of January 2025, nearly half of Texas business executives are currently hiring

---

[25] *Id.*

[26] U.S. CENSUS BUREAU, POVERTY IN THE UNITED STATES: 2021 (Sept. 2022) at 4 (poverty rates), https://www.census.gov/content/dam/Census/library/publications/2022/demo/p60-277.pdf.

[27] BUREAU OF LABOR STATISTICS, *Education Pays*, Unemployment rates and earnings by educational attainment, 2023, https://www.bls.gov/emp/tables/unemployment-earnings-education.htm.

workers.[28] Of those who are hiring, thirty-nine percent identified "lack of technical competencies (hard skills)" as an impediment to hiring—this was the second-largest impediment to hiring after a lack of applicants in general.[29]

Thus, maintaining an accountability system that reflects and incentivizes college, career, and military readiness is critical to Texas's businesses and its workforce staying globally competitive. Moreover, a continued lack of A-F accountability ratings stunts potential business expansion in Texas communities by denying businesses key information that can help incentivize a business to expand or relocate to communities across the state.

e.    **Taxpayers and The Texan Public**

As highlighted above, the Legislature has a duty under the Texas Constitution to maintain an efficient system of public schools. Tex. Const. art. VII, § 1. Thus, A-F accountability ratings are not only an accountability system, they are also a transparency system. Taxpayers rely on this system to ensure that tax dollars are appropriately and efficiently allocated toward student academic needs (and to correct improper stewardship when it arises). Thus, the accountability system functions to

---

[28] FEDERAL RESERVE BANK OF DALLAS, *Texas Business Outlook Surveys* (Jan. 27, 2025), https://www.dallasfed.org/research/surveys/tbos/2025/2501q.
[29] *Id.*

not only measure student progress but also to monitor the return on investment of the billions of dollars in public funds that are spent on public education each year.[30]

This emphasizes the larger point: above all, **A-F ratings are a *public* accountability system.** A–F ratings provide students, parents, educators, community partners, and business leaders a window into how well a school is preparing young Texans for the next grade level and for success after high school. This brief gives some examples of how withholding A-F ratings impacts these stakeholders. But regardless of whether someone is a student, parent, educator, community partner, business leader, taxpayer, or none of those things—all Texans have a vested interest in the efficacy and success of our public school system. The Legislature recognized this in affecting its mandate to provide for "a general diffusion of knowledge" through, in part, a *public* accountability system. Tex. Const. art. VII, § 1.

Returning to the statute: the Legislature mandated that, "Not later than August 15 of each year, the following information *shall* be made *publicly* available … (1) the performance ratings for each school district and campus; and (2) if applicable, the number of consecutive school years of unacceptable performance ratings for

---

[30] *See, e.g.*, TEA, *Report on Public Education State Funding Transparency* at 11 https://tea.texas.gov/about-tea/government-relations-and-legal/government-relations/public-education-state-funding-transparency-may-2024.pdf (reflecting $85.33 billion in annual funding for public education in fiscal year 2023).

each district and campus." Tex. Educ. Code § 39.054(a-3) (emphasis added). The TEA also "*shall*" maintain a specific website, "separate from the agency's Internet website, to be known as the Texas School Accountability Dashboard *for the public to access school district and campus accountability information*." Tex. Educ. Code § 39.309(a) (emphasis added). And districts must publicly post academic progress information, including historical comparisons of campus and district performance on state standards, as well as campuses that have received distinction designations and unacceptable performance ratings. Tex. Educ. Code § 39.306(d), (a)(2).

This is all in the service of *public* accountability. As the Commissioner has emphasized, "you can't improve what you can't see." App. Br. at 4. It is precisely because public education impacts the entire public that the Legislature created A-F ratings as a *public* accountability system. After all, every Texan ought to be able to see how well our public schools are serving students. This means that everyday Texans who aren't experts in K-12 assessments or (necessarily complex) accountability systems should have access to an approachable, "back-of-the-napkin" account of how schools in their neighborhood, community, and State are performing. Preventing public access to this vital (and public) information undermines the Legislature's plainly stated intent in creating this system.

26

**III. The Appropriate Remedy for the Commissioner's Alleged Failure to Meet Process Requirements is Not Continued Withholding of the A-F Ratings.**

*Amici* defer to the Court—aided by the Parties' counsel—to address the merit (or lack of merit) of Appellees' substantive allegations that the Commissioner acted ultra vires. *See generally* App. Br. at 16-32; Appellees' Br. at 22-30. But the parties do not (and cannot reasonably) dispute that a valid ultra vires claim is essential to jurisdiction over this case. *See, e.g.*, *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (noting that a "plaintiff suing the state or its officers" and alleging "ultra vires claims [must] allege facts affirmatively demonstrating actionable ultra vires conduct by state officials in order to avoid dismissal on jurisdictional grounds due to sovereign immunity.") (citations omitted) (cleaned up).

> Essential to an ultra vires claim is
>
> that the defendant government official acted without legal authority or failed to perform a ministerial act. An officer acts without legal authority if he exceeds the bounds of his granted authority or if his acts conflict with the law itself. If, however, the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity.

*Id.* at 388 (citations omitted) (cleaned up).

Even if the Court were to conclude that Appellant acted "truly outside [his] authority or in conflict with the law," *id.*, the answer is not—as the district court did—to prevent the Commissioner from issuing A-F accountability ratings which he is commanded to issue by law. That is because, as the Commissioner's brief points

27

out, the only remedy Plaintiffs may seek in an ultra vires suit is "prospective relief requiring the [Commissioner's] compliance with the law." App. Br. at 21-22 (citing *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*, 669 S.W.3d 178, 183 (Tex. 2023)).

Indeed, the Legislature has required the commissioner to annually release A-F accountability ratings. Currently, this litigation is subverting the stated purpose of the public accountability system and undermining the Legislature's intent. This goes well beyond the scope of relief that is proper in an ultra vires case. The Commissioner should not be compelled to wholly abandon the clear legislative directive to issue public accountability ratings.

\* \* \*

A-F accountability ratings set standards for student learning; measure student progress at campus, district, and state levels; and incentivize school systems to meet standards that will equip Texas children for success. This is necessary to meet the State's constitutional obligation to its students: to affect a "general diffusion of knowledge." Tex. Const. art. VII, § 1. Moreover, it is aligned with and supported by the State's statutory obligations under the Texas Education Code. Critically, *the accountability system is the singular practical mechanism for ensuring that these constitutional and statutory obligations are met*. A continued lack of accountability ratings harms students, parents, schools, community partners, businesses, and every

28

other Texan. It is therefore deeply problematic from both legal and practical perspectives to withhold these accountability ratings. Because the temporary injunction below denies Texans this crucial tool, it should be vacated, thereby allowing the issuance of critical accountability ratings for the 2023-2024 school year, and paving the way for the regular issuance of these ratings in the future.

## PRAYER

The Court should vacate the temporary injunction below and enter relief that will provide for the Commissioner to release the 2024 A-F accountability ratings with all deliberate speed.

Respectfully submitted,

/s/ Anne Maire Mackin
ANNE MAIRE MACKIN
Texas State Bar No. 24078898
Lex Politica PLLC
P.O. Box 341016
Austin, TX 78734
Telephone: 512-354-1785
amackin@lexpolitica.com

Counsel for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this document contains 7,484 words, excluding exempted text.

/s/ Anne Maire Mackin
Anne Maire Mackin

**CERTIFICATE OF SERVICE**

On March 4, 2025, this document was served upon the following lead counsel via email to the following addresses:

Beth Klusmann, Lead Counsel for Appellant, via Beth.Klusmann@oag.texas.gov

Kevin O'Hanlon, Lead Counsel for Appellees, via kohanlon@808west.com

/s/ Anne Maire Mackin
ANNE MAIRE MACKIN

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Anne Mackin on behalf of Anne Mackin
Bar No. 24078898
amackin@lexpolitica.com
Envelope ID: 98031148
Filing Code Description: Other Brief
Filing Description: Brief of Amici Curiae
Status as of 3/4/2025 11:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin OHanlon | | kohanlon@808west.com | 3/4/2025 10:42:53 AM | SENT |
| David Campbell | | dcampbell@808west.com | 3/4/2025 10:42:53 AM | SENT |
| Beth Klusmann | | beth.klusmann@oag.texas.gov | 3/4/2025 10:42:53 AM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 3/4/2025 10:42:53 AM | SENT |
| Kathryn French | | kfrench@808west.com | 3/4/2025 10:42:53 AM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 3/4/2025 10:42:53 AM | SENT |
| Kelsey Warren | | kelsey.warren@oag.texas.gov | 3/4/2025 10:42:53 AM | SENT |
| Marlayna Ellis | | marlayna.ellis@oag.texas.gov | 3/4/2025 10:42:53 AM | SENT |
| LaShanda Green | | LaShanda.Green@oag.texas.gov | 3/4/2025 10:42:53 AM | SENT |
| Anne Mackin | | amackin@lexpolitica.com | 3/4/2025 10:42:53 AM | SENT |